**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JAMES KISTLER and LISA LANG, individually and as representatives of a class of similarly situated persons, on behalf of the STANLEY BLACK & DECKER RETIREMENT ACCOUNT PLAN,<br><br>        Plaintiffs,<br>    v.<br><br> STANLEY BLACK & DECKER, INC.,<br>        Defendant. | Case No. 3:22-cv-966-SRU<br><br>December 21, 2023 |

**MEMORANDUM OF LAW IN REPLY TO PLAINTIFFS'
OPPOSITION TO DEFENDANT STANLEY BLACK & DECKER, INC.'S
<u>MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   PLAINTIFFS FAIL TO ASSERT A PLAUSIBLE BREACH OF FIDUCIARY DUTY
      FOR RETAINING THE BLACKROCK TDFS....................................................1

      A.    Plaintiffs Attempt to Manufacture Process Allegations by Misreading the
            IPS and Amended Complaint.......................................................................1
      B.    Plaintiffs' Cited Case Law Does Not Support Plaintiffs' Claim that the
            Amended Complaint Sufficiently Alleges Consistent and Significant
            Underperformance. ....................................................................................4
      C.    Plaintiffs' Cited Support for Denying SBD's Motion to Dismiss is
            Otherwise Detrimentally Lacking...............................................................5
      D.    Plaintiffs Fail to Provide Support for Their Alleged Comparison Points................6

III.  PLAINTIFFS FAIL TO ALLEGE A BREACH OF FIDUCIARY DUTY FOR
      RECORDKEEPING FEES...................................................................................7

      A.    Plaintiffs Ignore the Documents Incorporated Into the Amended
            Complaint to Engineer an Inflated Recordkeeping Fee. ...........................7
      B.    Plaintiffs' Allegations That All Recordkeepers Provide the Same Services
            Are Insufficient to Allege a Breach of Fiduciary Duty Claim.................8
      C.    Plaintiffs Fail to Address the Amended Complaint's Uninformative
            Recordkeeping Benchmarks. .....................................................................9

IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF DUTY OF
      LOYALTY AND KNOWING BREACH OF TRUST. ......................................10

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Anderson v. Advance Publ'ns, Inc.*
2023 WL 3976411 (S.D.N.Y. June 13, 2023) ............................................................5

*Baird v. BlackRock Institutional Trust Co.*,
403 F. Supp. 3d 765 (N.D. Cal. Sept. 3, 2019) .......................................................5

*B.B. v. The New School*,
2018 WL 2316342 (S.D.N.Y. Apr. 30, 2018)............................................................7

*Bekker v. Neuberger Berman Inv. Comm.*,
2019 WL 2073953 (S.D.N.Y. May 9, 2019), *aff'd* 86 F.4th 961 (2d Cir. 2023).......................4

*Boyette v. Montefiore Med. Ctr.*,
2023 WL 7612391 (S.D.N.Y. Nov. 13, 20223)........................................................8

*Carimbocas v. TTEC Servs. Corp.*,
2023 WL 8555384 (D. Colo. Dec. 11, 2023)...........................................................9

*Cunningham v. Cornell Univ.*,
-- F.4th --, 2023 WL 7504142 (2d Cir. Nov. 14, 2023)...............................................9

*Cunningham v. Cornell Univ.*,
2019 WL 4735876 (S.D.N.Y. Sept. 27, 209)...........................................................4

*Cutrone v. Allstate Corp.*
2021 WL 4439415 (N.D. Ill. Sept. 28, 2021) ........................................................5

*Disselkamp v. Norton Healthcare, Inc.*,
2019 WL 3536038 (W.D. Ken. Aug. 2, 2019) .........................................................4

*In re Express Scripts/Anthem ERISA Litig.*,
285 F. Supp. 3d 655 (S.D.N.Y. 2018), *aff'd*, 837 F. App'x 44 (2d Cir. 2020).......................3, 7

*Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*,
41 F.4th 71 (2d Cir. 2022) ............................................................................2, 10

*Garcia v. Alticor, Inc.*,
2021 WL 5537520 (W.D. Mich. Aug. 9, 2021)........................................................5

*Goodman v. Columbus Regional Healthcare Sys., Inc.*,
2022 WL 228764 (M.D. Ga. Jan. 25, 2022) ..........................................................5

*I. Meyer Pincus & Assoc. v. Oppenheimer & Co.*,
  936 F.2d 759 (2d Cir. 1991))), *aff'd,* 85 F.3d 55 (2d Cir. 1996) ...............................................8

*Jones v. DISH Network Corp.*,
  2023 WL 7458377 (D. Colo. Nov. 6, 2023) ...............................................................................6

*Lasker v. New York State Elec. & Gas Corp.*,
  1995 WL 867881 (E.D.N.Y. Aug. 22, 1995)...............................................................................8

*In re Linkedin ERISA Litig.*,
  2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) .........................................................................6, 7

*Marshall v. Northrop Grumman Corp.*,
  2019 WL 4058583 (C.D. Cal. Aug. 14, 2019)...........................................................................6

*Moler v. University of Md.*,
  2022 WL 2756290 (D. Md. July 13, 2022)...............................................................................4, 5

*Ramos v. Banner Health*,
  461 F. Supp. 3d 1067 (D. Colo. 2020).........................................................................................4

*Trauernicht v. Genworth Fin.*,
  2023 WL 5961651 (E.D. Va. Sept. 13, 2023).............................................................................6

*Vellali v. Yale Univ.*,
  308 F. Supp. 3d 673 (D. Conn. 2018)........................................................................................10

## I.    INTRODUCTION

Plaintiffs' Opposition (Doc. 100) to Stanely Black & Decker's ("SBD") opening memorandum seeking dismissal variously misconstrues or disregards the documents Plaintiffs chose to incorporate into the Amended Complaint and fails to address most of the case law upon which SBD relies, showing that dismissal is warranted.  As SBD demonstrated through its opening memorandum (Doc. 96), Plaintiffs' Amended Complaint fails to state any plausible claims under ERISA and is subject to dismissal with prejudice as a matter of law.

## II.    PLAINTIFFS FAIL TO ASSERT A PLAUSIBLE BREACH OF FIDUCIARY DUTY FOR RETAINING THE BLACKROCK TDFS.

### A.    Plaintiffs Attempt to Manufacture Process Allegations by Misreading the IPS and Amended Complaint.

Plaintiffs' Opposition misconstrues the IPS to draw attention away from the fact the Amended Complaint still only alleges short-term, slight underperformance.  (Doc. 100, at 20-31; Doc. 96, at 12-18).  Despite the language of the IPS, which states that it sets forth "guidelines," Plaintiffs argue that "the Committee was required to adhere to the IPS standards governing the monitoring and removal of investments in the Plan" and that SBD failed to monitor "the performance of the BlackRock TDFs on a three-year and five-year basis" and remove the BlackRock TDFs for "sustained underperformance" as required by the IPS.  (Doc. 96, at 4; Doc. 100, at 22 (citing Doc. 85 ¶ 79), 25).  But the Amended Complaint does not support this.  First, Plaintiffs misstate the Amended Complaint's allegations.  Paragraph 79 does not allege that SBD failed to monitor the performance of the BlackRock TDFs on a three- and five-year basis.  Rather, it alleges that as the BlackRock TDFs are actively managed (which they are not, as Plaintiffs' brief now concedes),[1] SBD should have monitored the performance of the BlackRock TDFs "compared

---

[1] Throughout the Amended Complaint, Plaintiffs allege that the BlackRock TDFs are actively managed funds.  (Doc. 96, at 6-7, 22-23).  Now it appears that Plaintiffs are claiming that the BlackRock TDFs are passively managed despite

to available alternative TDFs on a rolling three-or five-year basis."[2]  (AC ¶ 79; Doc. 96, at 6-7, 22-23; Doc. 97, Ex. 1, at 8).

Second, in direct contravention of the Amended Complaint's allegations (Doc. 85 ¶ 79), the committee materials cited in the Amended Complaint show that the BlackRock TDFs' performance was monitored on a 3-year and 5-year basis.  (Doc. 99, Ex. 29, at SBD0001202, SBD0001205, SBD0001217-25[3]; Doc. 97, Ex. 1, at 9).  Plaintiffs even admit that the Amended Complaint contains allegations supporting that the "Committee had reports showing[] at each of the Meeting[s] . . . performance over the three- and five-year periods . . . ."[4]  (Doc. 100, at 24; Doc 85 ¶¶ 82-99).  And, contrary to Plaintiffs' argument that the Committee's minutes reflect "silence" on review of performance of the Plan's investments, including the BlackRock TDFs (Doc. 100 at 22-23), the minutes reflect a review of investment performance at every meeting.[5]  Plaintiffs' contradictory allegations within the Amended Complaint, and their allegations and arguments contradicting the documents cited in the Amended Complaint, should be disregarded.  In deciding a motion to dismiss, the "Court is not obliged to reconcile and accept as true 'pleadings that are

---

the Amended Complaint's allegations to the contrary.  (Doc. 100, at 26, 29).  However, "the law is clear 'that a party may not amend pleadings through a brief.'" *Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71, 80 (2d Cir. 2022) (quoting *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 153 (2d Cir. 2013)).

[2] The Amended Complaint and the Opposition take portions of the IPS guidelines that discuss investment fund *selection* relating to actively managed funds, which the BlackRock TDFs are not, and mixes them with portions from the investment fund *monitoring* guidelines.  (Doc. 85 ¶ 79; Doc. 100, at 22; Doc. 96, at 6-7, 22-23).  The IPS states that for "investment fund selection" one of the criteria for determining whether to add an actively managed fund is "whether the fund has a record of performing well in up and down markets . . . compared to the relevant peer group and relevant published market indices."  (Doc. 97, Ex. 1, at 8).  Then for investment fund monitoring, the IPS states that the BlackRock TDFs' "performance relative to the [custom] benchmark[] . . . shall be assessed over three- and five-year periods."  (Doc. 97, Ex. 1, at 9).

[3] Decl. Exs. 30-40.  Each of these materials are incorporated by reference into the Amended Complaint.  (Doc. 85, ¶¶ 82, 84, 86, 88, 90, 92, 94, 96, 98, 114, 115, 116, 117).

[4] Plaintiffs claim that paragraph 82 of the Amended Complaint alleges that the Committee had reports comparing the performance of the BlackRock TDFs to the S&P TDF Index.  (Doc. 100, at 24).  There is no mention of the S&P TDF Index in paragraph 82 or any of the committee reports cited to in the Amended Complaint.  (Doc. 85 ¶ 82; Decl. Exs. 30-40.)

[5] Decl. Exs. 31-48; Doc. 96, at 23-24; Doc. 97, Ex.10.  Each of these minutes are incorporated by reference into the Amended Complaint.  (Doc. 85, ¶¶ 82-99, 115, 116, 117, 125).

2

contradicted by other matters asserted or relied upon or incorporated by reference . . ..'" *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 671 (S.D.N.Y. 2018) (citation omitted), *aff'd*, 837 F. App'x 44 (2d Cir. 2020).

Third, the Amended Complaint's performance allegations do not support the claim that the BlackRock TDFs suffered from "sustained underperformance." (Doc. 100, at 22, 25; Doc. 85, at ¶¶ 80, 114; Doc. 96, at 12-18). Nowhere in the IPS does it state that a fund must be removed for "sustained underperformance."[6] (Doc. 96, at 18 n.12). Further, Plaintiffs' performance allegations amount to nothing more than intermittent, negligible underperformance, which is insufficient to allege a plausible claim for breach of fiduciary duty of prudence. (Doc. 96, at 12-18).

Fourth, while Plaintiffs deny that the Amended Complaint focuses myopically on performance and argue that it instead presents "process-based fact allegations," Plaintiffs ignore the allegations in the Amended Complaint. (Doc. 100, at 2). As Plaintiffs admit in their brief, Plaintiffs allege that the *only* prudent decision would have been to remove the BlackRock TDFs. (Doc. 100, at 11 (citing Doc. 85, at ¶¶ 115-117)). And Plaintiffs' only basis for alleging there was a breach of fiduciary duty is alleged underperformance. (Doc. 100, at 10, 20, 30 (citing Doc. 85, at ¶¶ 82-89, 115-124)). Specifically, Plaintiffs allege there must have been a breach of ERISA's fiduciary duty of prudence because the Plan's fiduciaries did not replace the BlackRock TDFs with the Vanguard TDFs despite the BlackRock TDFs allegedly cumulatively underperforming the Vanguard TDFs by 2.83%. (Doc. 85, at ¶ 120). If that were true, however, then by Plaintiffs' own theory it *also* would have been a breach of fiduciary duty to select the Vanguard TDFs when the T. Rowe Price TDFs outperformed the Vanguard TDFs over the same period by an even larger

---

[6] The IPS lists "[u]nderperformance versus the benchmark and/or peers over a sustained period" as a possible reason for terminating a fund in the Plan. (Doc. 97, Ex. 1, at 9). But the IPS also states that the Committee may decide to retain a fund even if it meets one of the criteria for fund termination. (*Id.*).

3

margin. (*See id.* alleging the BlackRock TDFs underperformed the T. Rowe Price TDFs by cumulatively 9.08%). Moreover, if Plaintiffs' theory of imprudence were correct—that it is necessarily a breach of fiduciary duty to not select a better performing investment—it *also* would have been a breach of fiduciary duty to select the T. Rowe Price TDFs because the American Funds TDFs outperformed the T. Rowe Price TDFs over the same period by an equal margin. (*See id.* alleging the BlackRock TDFs underperformed the American Funds TDFs by 11.90%).

### B. Plaintiffs' Cited Case Law Does Not Support Plaintiffs' Claim that the Amended Complaint Sufficiently Alleges Consistent and Significant Underperformance.

In support of their argument that the Amended Complaint alleges long-term underperformance despite only using three- and five-year returns, Plaintiffs cite to two easily distinguishable Southern District of New York cases and *ignore* SBD's cases to the contrary. (Doc. 100, at 24-25; Doc. 96, at 16-18). Plaintiffs' reliance on *Cunningham* is misplaced as it is a summary judgment opinion and does not discuss pleading standards. *Cunningham v. Cornell Univ.*, 2019 WL 4735876, at \*13 (S.D.N.Y. Sept. 27, 209). And *Bekker v. Neuberger Berman Investment Committee*, involves allegations that the fund at issue was "overly expensive," an allegation that is not present here. 2019 WL 2073953, at \*4 (S.D.N.Y. May 9, 2019), *aff'd* 86 F.4th 961 (2d Cir. 2023).

The remainder of Plaintiffs' support consists of out-of-Circuit district court cases, all of which are distinguishable. (Doc. 100, at 25-26). *Ramos v. Banner Health* is a trial decision that does not touch on the standard for alleging a breach of fiduciary duty. 461 F. Supp. 3d 1067 (D. Colo. 2020). *Disselkamp v. Norton Healthcare, Inc.*, involves an annuity product that guaranteed performance. 2019 WL 3536038 (W.D. Ken. Aug. 2, 2019). *Moler v. University of Maryland Medical System* includes allegations that the funds "charged grossly excessive fees" and "underperformed their benchmark *indices over a 10-year period*." 2022 WL 2756290, \*4-5 (D.

4

Md. July 13, 2022) (emphasis added).  Similarly, both *Goodman* and *Garcia* include allegations that the fund was costly.  (Doc. 100, at 26 (stating that *Goodman v. Columbus Regional Healthcare Sys., Inc.*, 2022 WL 228764, at *2 (M.D. Ga. Jan. 25, 2022) and *Garcia v. Alticor, Inc.*, 2021 WL 5537520, at *7 (W.D. Mich. Aug. 9, 2021) include allegations that the funds were overly expensive)).  *Cutrone v. Allstate Corp.* includes allegations of underperformance against the benchmark the committee actually used to assess performance.  2021 WL 4439415, at *3 (N.D. Ill. Sept. 28, 2021).  And lastly, *Baird v. BlackRock Institutional Trust Co.*, includes allegations of hidden fees and layers.  403 F. Supp. 3d 765, 780 (N.D. Cal. Sept. 3, 2019).

     **C.**     **Plaintiffs' Cited Support for Denying SBD's Motion to Dismiss is Otherwise Detrimentally Lacking.**

Plaintiffs ignore the BlackRock decisions dismissing similar allegations, with the lone exception of *Anderson v. Advance Publ'ns, Inc*. 2023 WL 3976411 (S.D.N.Y. June 13, 2023). (Doc. 100, at 23-24; Doc. 96, at 14-15).  In *Anderson*, the court dismissed plaintiff's ***amended complaint***, which contained process allegations similar to the allegations here.  (Doc. 96, at 14-15).  Plaintiffs argue that "as Defendant well knows, the court in *Anderson v. Advance Publications, Inc.* never ruled on the sufficiency of the ***second amended complaint*** in that action asserting similar allegations of failure to meet IPS guidelines and lack of discussion at committee meetings."  (Doc. 100, at 23 (emphasis added)).  However, SBD's opening brief compares and attaches the January 27, 2023 ***amended complaint*** in *Anderson,* which was dismissed, not the June 27, 2023 ***second amended complaint***.  (Doc. 96, at 15 & Doc. 97, Ex. 8, *Anderson* Am. Compl. ¶ 56; *Anderson v. Advance Publ'ns, Inc.*, 1:22-cv-06826, Doc. No. 105, Second Am. Compl. (SDNY)).

Plaintiffs' only support for their argument that courts presented with "similar plan-specific allegations" have denied motions to dismiss consists of two out-of-circuit, distinguishable

5

decisions.  (Doc. 100, at 20-21, 23-24). In *Trauernicht v. Genworth Fin.*, 2023 WL 5961651 (E.D. Va. Sept. 13, 2023), the court found compelling the allegation that the committee did not meet frequently enough.  *Id*. at \*10.  In *Jones v. DISH Network Corp.*, 2023 WL 7458377 (D. Colo. Nov. 6, 2023), there were allegations that the TDFs at issue "experienced asset outflow resulting from a loss of investor confidence," the TDFs were criticized for their risk, and the plan's investment advisor had brought to the attention of the committee a suitable replacement TDF.  *Id.* at \*3-4, 6.  There are no such allegations here.[7]

### D.    Plaintiffs Fail to Provide Support for Their Alleged Comparison Points.

Without citation to a single case or to the IPS, Plaintiffs claim that their Comparator TDFs and benchmarks are apt because the IPS "calls for comparison of the BlackRock TDFs to each." (Doc. 100, at 26, 27).  Plaintiffs are wrong; the IPS does not require the Committee to compare the BlackRock TDFs' performance to that of Plaintiffs' cherry-picked Comparator TDFs, the S&P Target Index, or the Sharpe ratio.  The IPS contains no reference to any of these comparison points. (Doc. 96, at 20 n. 16 (no reference to the S&P Target Index); Doc. 97, Ex. 1, at 9 (no reference to the S&P Target Index, the Sharpe ratio, or the alleged Comparator TDFs).

Plaintiffs also claim that deciding whether the Comparator TDFs are appropriate is not suitable for determination at the motion to dismiss stage but fail to address the recent case law, both in-Circuit and at the Circuit Court level, which SBD cites to the contrary.  (Doc. 100, at 27-28; Doc. 96, at 19-20).  Plaintiffs further argue that active funds can be meaningful benchmarks for index funds (and vice versa), relying primarily on an out of Circuit district court case, *In re*

---

[7] To counter SBD's argument that minutes need not be verbatim (Doc. 96, at 23-24), Plaintiffs elect not to address SBD's case law but rather to rely on *Marshall v. Northrop Grumman Corp.* (Doc. 100, at 30), which found, in considering a motion for summary judgment where there was a voluminous record and committee member declarations, that a trier of fact could find that the committee "failed to adequately weigh the costs and benefits" of the fund. 2019 WL 4058583, at \*10 (C.D. Cal. Aug. 14, 2019).  The case does not discuss the committee minutes.

6

*Linkedin ERISA Litig.*, 2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) ("*In re Linkedin*").  (Doc. 100, at 28-29).  Plaintiffs once again ignore the plethora of in-Circuit and Circuit-level case law to the contrary.  (Doc. 100, at 28-29; Doc. 96, at 19).  And, *In re Linkedin* involves allegations which are not present here—that the "Active and Index Suites share the same management firm and nearly identical glide paths."  2021 WL 5331448, at *8.

Last, Plaintiffs wrongly assert that "Defendant does not, and cannot, contend this purported difference renders the Fidelity Freedom Index Funds or the Vanguard Target Retirement Funds, the Comparator TDFs with passively managed strategies, inappropriate comparators."  (Doc. 100, at 29).  Yet, SBD's opening brief explains the critical differences between these two funds and the Black Rock TDFs; the BlackRock TDFs use a "to" glide path, while the Comparator TDFs all use a "through" glide path, and the Vanguard and Fidelity funds have a lower rating than the BlackRock TDFs.   (Doc. 96, at 7-8, 18).

## III.   PLAINTIFFS FAIL TO ALLEGE A BREACH OF FIDUCIARY DUTY FOR RECORDKEEPING FEES.

### A.   Plaintiffs Ignore the Documents Incorporated Into the Amended Complaint to Engineer an Inflated Recordkeeping Fee.

Plaintiffs claim that the "Plan paid the same $49 per participant rate for over six years." (Doc. 100, at 31).  However, the Service Agreement with the Plan's recordkeeper, Wells Fargo, which is referenced in the Amended Complaint, states that at least as of August 1, 2020, the per participant recordkeeping fee is $39.  (Doc. 96, at 25).  Nowhere in Plaintiffs' Opposition do they address this inconsistency other than to claim that this is a factual issue that cannot be determined at this stage.  (Doc. 100, at 34 n.15).  Again, the Court need not accept as true allegations that are contradicted by the documents upon which the Amended Complaint relies.  *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d at 671; *see B.B. v. The New School*, 2018 WL 2316342, at *6 (S.D.N.Y. Apr. 30, 2018) (finding allegations implausible where they contradicted

the exhibits to the complaint and plaintiff "offer[ed] no explanation in his complaint or opposition brief that reconciles the conflict between his allegations and the exhibits").  Accordingly, the Court should dismiss Plaintiffs' recordkeeping claim as implausible.

To find otherwise, would allow Plaintiffs to allege recordkeeping fees using a completely unreliable source—Forms 5500 (Doc. 96, at 29-30)—despite the Plan's documents, which are cited to in the Amended Complaint, providing a different, lower number for recordkeeping fees, to wrongly evade a motion to dismiss.  *See Lasker v. New York State Elec. & Gas Corp.*, 1995 WL 867881, at *4 (E.D.N.Y. Aug. 22, 1995) ("The full consideration of such documents is necessary lest a court be subject to possibly evasive tactics by plaintiffs that may selectively quote from a document not attached to its complaint and thus blindfold the court and prevent a proper consideration of the true merits of the pleadings."  (citing *I. Meyer Pincus & Assoc. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991))), *aff'd,* 85 F.3d 55 (2d Cir. 1996); (Doc. 96, at 29-30 (explaining that Plaintiffs' recordkeeping fee calculations are unreliable)).

### B.    Plaintiffs' Allegations That All Recordkeepers Provide the Same Services Are Insufficient to Allege a Breach of Fiduciary Duty Claim.

Plaintiffs claim that all it takes to plausibly allege a breach of fiduciary duty for recordkeeping fees is to allege there are "standard bundled services" that all recordkeepers provide and that any "a la carte" services are immaterial to pricing.  (Doc. 100, at 32, 34-36).  Recent case law says otherwise.  (Doc. 96, at 25-27); *Boyette v. Montefiore Med. Ctr.*, 2023 WL 7612391, at *6 (S.D.N.Y. Nov. 13, 20223) (dismissing recordkeeping claim and holding that plaintiffs' reliance "on the general assertion that nearly all recordkeepers in the marketplace offer the same range of services and can provide the services at very little cost" was insufficient to plead a plausible breach).  The Second Circuit also recently held that "it is not enough to allege that fees were higher than some theoretical alternative service.  Whether fees are excessive or not is relative

8

'to the services rendered' . . . and it is not unreasonable to pay more for superior services." *Cunningham v. Cornell Univ.*, -- F.4th --, 2023 WL 7504142, at *10 (2d Cir. Nov. 14, 2023) (quoting *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 346 (2010)).  Plaintiffs rely on older cases from this district, but each is distinguishable.  (Doc. 100, at 33-34, 35-36; Doc. 96, at 31 & n.30).

Plaintiffs also ignore that the Forms 5500 upon which they rely show that the comparator plans provided an array of differing services.  (Doc. 96, at 30-31).  Such differences defeat Plaintiffs' recordkeeping claim at this stage.  *See Carimbocas v. TTEC Servs. Corp.*, 2023 WL 8555384, at *5 (D. Colo. Dec. 11, 2023) (dismissing recordkeeping claim where the allegations of services rendered were insufficient, and noting that at the motion to dismiss stage, there must be alleged "a close congruence between the services provided by the plaintiff's plan and any comparator," and further noting that "differences in the catalog of services provided by each . . . [service provider] will quickly dissipate the usefulness of the comparator as a benchmark").

### C. Plaintiffs Fail to Address the Amended Complaint's Uninformative Recordkeeping Benchmarks.

Plaintiffs claim that the Amended Complaint identifies 31 "comparably-sized plans" and "lays out comparisons of the [SBD] Plan to these" by asset-size and participant number.  (Doc. 100, at 32).  Yet, nowhere in the Amended Complaint do Plaintiffs identify the assets of the alleged comparator plans, and comparing the Plan to other plans with more than double the participants and more than eight times the amount of assets is not an apples-to-apples comparison.  (Doc. 96 at 28-29; Doc. 85 ¶ 58).  Moreover, Plaintiffs' premise that participant count is the primary driver of recordkeeping fees is undermined by Plaintiffs' allegations.  (Doc. 100, at 32).  For example, the Amended Complaint claims that the Leidos, Inc. Retirement Plan, with almost 47,000 participants, paid a $31 per-participant recordkeeping fee.  (Doc. 85 ¶ 58).  Yet Plaintiffs identify

a *dozen* other plans with *fewer* participants than the Ledios plan that, according to Plaintiffs, paid

*lower* per-participant recordkeeping fees.  (*Id*).

**IV.    PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF DUTY OF LOYALTY AND KNOWING BREACH OF TRUST.**

Plaintiffs admit that the Amended Complaint does not have the requisite, separate

allegations to support a claim for breach of the duty of loyalty.  (Doc. 100, at 39 n.20).  Indeed,

the Amended Complaint does not have any allegations that support an inference that SBD acted

for the purpose of providing benefits to itself or to someone else.  (Doc. 96, at 35).  Plaintiffs argue

instead that the Amended Complaint's allegations that SBD failed to "recognize and remediate

known or knowable IPS failures and undertake even the minimum necessary measures to reduce

fees borne by participants" are sufficient to support a claim for breach of the duty of loyalty.  (Doc.

100, at 39).  But these are just repackaged prudence allegations and, at best, allege an incidental

benefit to the non-affiliated recordkeeper, both of which are insufficient to allege a breach of duty

of loyalty.  *See Vellali v. Yale Univ.*, 308 F. Supp. 3d 673, 688 (D. Conn. 2018) (dismissing breach

of duty of loyalty claim and explaining that "a theory of breach based on incidental benefit, without

more, cannot support a breach of duty of loyalty claim" (citation omitted)).

Finally, Plaintiffs claim that the Amended Complaint has a "Count III" for knowing breach

of trust.  (Doc. 100, 39-40).  Though the original complaint contained a Count III for knowing

breach of trust (Doc. 1 ¶¶ 113-15), there is no such count in the Amended Complaint.  (Doc. 85 ¶¶

147-160).  Plaintiffs cannot plead a claim into their Amended Complaint through their Opposition.

*Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71, 80 (2d Cir. 2022).

Dated: December 21, 2023            Respectfully submitted,

/s/ *Peter M. Nolin*
Peter M. Nolin (ct06223)

**CARMODY TORRANCE SANDAK**
 **& HENNESSEY LLP**
1055 Washington Boulevard, 4th Floor
Stamford, Connecticut 06901-2218
Telephone: (203) 252-2688
E-mail: pnolin@carmodylaw.com

**NIXON PEABODY LLP**

Charles M. Dyke*
1 Embarcadero Center, 32nd Floor
San Francisco, CA 94111
Tel: (415) 984-8200
cdyke@nixonpeabody.com

Ian C. Taylor*
Jennifer K. Squillario*
799 9th Street NW, Suite 500
Washington, DC 20001-5327
Tel: (202) 585-8077
itaylor@nixonpeabody.com
jsquillario@nixonpeabody.com

*admitted pro hac vice

**Attorneys for Defendant Stanley Black & Decker, Inc.**

11

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 21, 2023, MEMORANDUM OF LAW IN REPLY TO

PLAINTIFFS' OPPOSITION TO DEFENDANT STANLEY BLACK & DECKER, INC.'S

MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT with the Clerk of Court

using the CM/ECF system which will send notification of such filing and effectuate service to all

counsel of record in this matter.

/s/ *Peter M. Nolin*
Peter M. Nolin (ct06223)

**CARMODY TORRANCE SANDAK
  & HENNESSEY LLP**
1055 Washington Boulevard, 4th Floor
Stamford, Connecticut 06901-2218
Telephone: (203) 252-2688
E-mail: pnolin@carmodylaw.com

12